IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CAMERON S. COCKROFT,                    )
                                        )
                    Plaintiff,          )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 09-2118-KHV-GBC
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____ )


## REPORT AND RECOMMENDATION

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) evaluating plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  The Commissioner found plaintiff was disabled for a "closed period" beginning December 31, 2004 and ending on January 7, 2006.  (R. 29).  Finding error in the ALJ's evaluation of the medical opinion evidence, the court recommends the decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.   Background

Plaintiff applied for DIB and SSI on February 18, 2005 alleging disability since December 31, 2004.  (R. 15).  The applications were denied on August 18, 2005, and plaintiff requested a hearing before an administrative law judge (ALJ). Id.  Plaintiff's request was granted, and plaintiff appeared with counsel for a hearing before ALJ William G. Horne on May 24, 2007.  Id.  At the hearing, testimony was taken from plaintiff, from plaintiff's mother, and from a vocational expert.  (R. 15, 354-415).  The ALJ issued a decision on June 21, 2007, in which he found that plaintiff was disabled within the meaning of the Act beginning on December 31, 2004, but that medical improvement which is related to the ability to work occurred on January 7, 2006, and that thereafter plaintiff has not been disabled within the meaning of the Act.  (R. 15-29).

Plaintiff sought, but was denied, Appeals Council review of the ALJ's decision.  (R. 3-6, 8, 352-53).  Therefore, the ALJ's decision is the Commissioner's final decision.  Id. at 3; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's

impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In accordance with the Act, the regulations also provide for termination of benefits if there has been medical improvement in the recipient's impairment(s) that relates to the recipient's ability to work, and if the recipient is now able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1594(a), 416.994(b).  The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

Id. §§ 404.1594(b)(1), 416.994(b)(1)(i).

The Commissioner has promulgated an eight-step sequential evaluation process to be applied in termination-of-benefit

reviews.  Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir. 2004);

Jaramillo v. Massanari, 21 Fed. Appx. 792, 794 (10th Cir. 2001);

20 C.F.R. § 404.1594(f)(1-8)[1].  If at any step a determination

can be made that a recipient is unable to engage in substantial

gainful activity, evaluation under a subsequent step is not

necessary.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  In step

one, the Commissioner must determine whether the claimant is

presently engaged in substantial gainful activity.  Id.

§ 404.1594(f)(1).  Step two considers whether the recipient has a

medically severe impairment or combination of impairments which

is equivalent to one of the impairments listed in Appendix 1 to

the regulations.  If any or all of the recipient's current

impairment(s) meets or equals a listed impairment, his disability

is conclusively presumed to continue.  Id. §§ 404.1594(f)(2),

416.994(b)(5)(i).  In step three, the Commissioner determines if

the recipient's impairment(s) which was present at the most

recent favorable decision has undergone medical improvement.  Id.

§§ 404.1594(f)(3)&(b)(1), 416.994(b)(5)(ii)&(b)(1)(i).  To

determine whether medical improvement has occurred, the ALJ

---

[1]In determining whether disability continues when an
individual is receiving SSI payments, the process involves only
seven steps.  20 C.F.R. § 416.994(b)(5)(i-vii).  The difference
is that the DIB evaluation includes as the first step a
determination whether the recipient is presently engaged in
substantial gainful activity.  Id. § 404.1594(f)(1).  For SSI
recipients, there is no such step.  Thereafter the sequential
evaluation process is identical, whether the recipient is
receiving SSI or DIB.

compares "the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision . . . to the medical severity of that impairment(s) at that time." Id. §§ 404.1594(b)(7); 416.994(b)(1)(vii). Medical improvement has occurred where there is a decrease in medical severity, which is shown by "changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." Id. §§ 404.1594(c)(1); 416.994(b)(2)(i).

If medical improvement is found in step three, step four involves a determination whether that medical improvement is related to the recipient's ability to work. Id. §§ 404.1594(f)(4), 416.994(b)(5)(iii). In deciding whether medical improvement is related to the ability to work, the ALJ will compare plaintiff's current RFC "based upon this previously existing impairment(s) with [his] prior residual functional capacity." Id. §§ 404.1594(b)(7); 416.994(b)(1)(vii). "Unless an increase in the current residual functional capacity is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will not be considered to be related to [plaintiff's] ability to work." Id. §§ 404.1594(c)(2), 416.994(b)(2)(iii).

If the Commissioner determines, at step three, that there has been no medical improvement or, at step four, that any

medical improvement is not related to the recipient's ability to work, the Commissioner will determine that disability continues unless he finds at step five that certain statutory exceptions apply.  Id. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If medical improvement related to the recipient's ability to work is found at steps three and four, the commissioner will determine, at step six, whether all of the recipient's current impairments in combination are severe.  Id. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the recipient's current impairments in combination are severe, the Commissioner will assess his "residual functional capacity based on all [his] current impairments and consider whether [he] can still do work [he has] done in the past."  Id. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  If so, the recipient's disability benefits will be terminated.  Id.  Finally, at step eight, the Commissioner will determine, considering the recipient's current residual functional capacity (RFC), age, education, and past work experience, whether the recipient can perform other work existing in the economy.  Id. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If so, the recipient's disability benefits will be terminated.  Id.

     In the Tenth Circuit, the burden in a termination case is on the Commissioner to show both (1) medical improvement related to claimant's ability to work, and (2) that the claimant is currently able to engage in substantial gainful activity.  Patton

v. Massanari, No. 01-7023, 2001 WL 1173271 at *1, 20 Fed. Appx. 788, 789 (10th Cir. Oct. 4, 2001)(citing Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994); and 20 C.F.R. 404.1594(a)); Jaramillo v. Massanari, No. 01-2033, 2001 WL 1117292 at *1, 21 Fed. Appx. 792, 794 (10th Cir. Sept. 24, 2001)(same).

The Tenth Circuit has determined that the "medical improvement" standard applies in "closed period" cases such as this in which the Commissioner determines in a decision on a single proceeding that a claimant was disabled for a period of time, but that the disability ceased thereafter. Shepherd v. Apfel, 184 F.3d 1196, 1198, 1200-01 (10th Cir. 1999).[2] A court in this district has applied the burden of proof for termination cases to "closed period" cases, and determined that "in a 'closed period' case the Commissioner has the burden to prove both (1) medical improvement related to claimant's ability to work, and (2) ability to engage in substantial gainful activity." Robbins v. Barnhart, 205 F. Supp. 2d 1189, 1199 (D. Kan. 2002).

Plaintiff claims the ALJ's finding of medical improvement is erroneous because:  the ALJ erred in evaluating the credibility

---

[2]The Shepherd court did not apply the "additional steps involved in disability reviews," but only the medical improvement standard.  Shepherd, 184 F.3d at 1201, n.5(citing 20 C.F.R. § 404.1594(f)).  Here, the ALJ applied the eight-step evaluation process for termination cases.  (R. 17).  The court need not consider the propriety of this application because neither plaintiff nor the Commissioner objects to the procedure used. Moreover, the court's decision herein relies only upon consideration of the medical improvement standard.

of plaintiff's allegations of symptoms; he erred in weighing the opinion of plaintiff's treating physician, Dr. Lauchland; and he erred in evaluating the testimony of plaintiff's mother. Plaintiff also argues that because the ALJ erred in finding medical improvement, he consequently erred in relying upon vocational expert testimony based upon his erroneous medical improvement finding. The Commissioner argues that the ALJ properly evaluated the credibility of plaintiff and his mother, properly determined the opinion of plaintiff's treating psychiatrist was entitled to "less weight," and properly relied upon the vocational expert testimony. The court agrees with plaintiff that the ALJ erred in weighing the opinion of plaintiff's treating psychiatrist, and that the finding of medical improvement is, therefore, not supported by substantial evidence in the record as a whole.

While there may be some merit in plaintiff's claims regarding credibility, considerable deference is due an ALJ's credibility determinations. Hackett, 395 F.3d at 1173("Credibility determinations are peculiarly the province of the finder of fact"); Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994)(court will usually defer to the ALJ on matters involving witness credibility). Therefore, the court will not address the credibility issues, and plaintiff may make his arguments regarding credibility to the ALJ on remand. Because

the court finds error in evaluating the treating source opinion, on remand (and after properly weighing the opinion), the Commissioner must determine if medical improvement related to plaintiff's ability to work has occurred, and if so, must properly assess plaintiff's RFC. At that time the ALJ must determine whether additional vocational expert testimony is necessary to decide whether plaintiff is able to perform past relevant work or other work existing in the economy.

## III. Analysis

### A. The Decision

The ALJ first applied the five-step sequential evaluation process and determined that (1) plaintiff did not engage in substantial gainful activity from December 31, 2004 through the date of the decision; (2) that plaintiff has the severe impairment of bipolar disorder; (3) that between December 31, 2004 and January 6, 2006, plaintiff's impairments did not meet or equal the severity of a listed impairment; (RFC assessment) that between December 31, 2004 and January 6, 2006, plaintiff had the RFC to perform work at the light exertional level, but was "unable to sustain work activity at any exertional level eight hours a day, five days a week, due to the residuals from his bipolar disorder," (R. 20); (4) that between December 31, 2004 and January 6, 2006, plaintiff was unable to perform past relevant work; (5) that between December 31, 2004 and January 6,

2006, there were not a significant number of jobs in the economy of which plaintiff was capable; and that plaintiff was disabled as defined in the Act from December 31, 2004 through January 6, 2006. (R. 19-23). The ALJ next found: that medical improvement in plaintiff's impairment occurred as of January 7, 2006; that beginning January 7, 2006 plaintiff had no impairment or combination of impairments which meets or equals a listed impairment; that beginning January 7, 2006, plaintiff has the RFC to perform the full range of light work except that he is limited to simple, routine, repetitive work which is as stress free as possible, which does not require work at unprotected heights or on ladders or scaffolds, and which requires only limited contact with supervisors or the public; that the medical improvement which has occurred is related to the ability to work; that plaintiff still remains unable to perform past relevant work; that there are a significant number of jobs available in the economy which plaintiff is able to perform beginning January 7, 2006; and therefore, plaintiff's disability ended on January 7, 2006. (R. 23-28).

In assessing plaintiff's RFC between December 31 2004 and January 6, 2006, the ALJ summarized the medical evidence for the period, and noted evidence that early in the period plaintiff was hospitalized due to bipolar disorder with psychotic features, that a discharge summary dated February 16, 2005 revealed

plaintiff was "extremely hyperactive, explosive and liable [sic], intrusive with staff and peers, unable to accept feedback or redirection, irritable and angry, had racing thoughts, poor judgment and insight and reported fears people were trying to kill him," and that plaintiff did not have a complete remission of symptoms during the hospitalization. (R. 21)(citing Ex. 4F/1-3(R. 158-60)).[3] The ALJ noted evidence that over the following year plaintiff's psychoses dissipated, that in September, 2005

---

[3]The court notes that the "Court Transcript Index" and the "List of Exhibits" filed by the Commissioner have made it difficult and time-consuming for the court to review the record evidence and to find the evidence cited and relied upon by the ALJ. D. Kan. Rule 7.6(a)(4) requires that an index of the "<u>separately labeled</u>" exhibits attached to briefs or memoranda be provided to the court. The Commissioner has not done so.

The Commissioner's "Exhibit Index to the Transcript of the Record" does not meet the requirements of the local rule because it merely lists the four sections into which the administrative record was arbitrarily divided to facilitate filing in the court's CM/ECF system. (Doc. 5)(Answer, Attach. 1). The "List of Exhibits" contained in the administrative record does not meet the requirements because it merely identifies Sections A, B, D, E, and F of the 415-page administrative record filed in this case, but does not individually identify each exhibit included in the administrative record, or identify the pages of the record at which each exhibit is located. (R. 1). Thus, the court was forced to search through each of four "attachments" to find each exhibit or page of the record to which the ALJ cited.

The court notes that the Social Security Administration (SSA) has begun preparing case files for electronic filing in a logically segmented manner in which the administrative record is filed in CM/ECF such that the court may take advantage of the hyperlinking within the SSA electronic files. <u>E.g.</u>, <u>Shomber v. Astrue</u>, No. 09-2313-CM, Answer, Attchs. 1-13 (D. Kan. Aug. 7, 2009); <u>Wilson v. Astrue</u>, No. 09-2354-JAR, Answer, Attchs. 1-9 (D. Kan. Sept. 1, 2009). The court applauds this effort and finds the new system very helpful. However, the court is disappointed that the Commissioner has failed to meet his duty to properly index the exhibits in cases where the new system is not used.

treatment records indicated plaintiff had a stable mood, no
evidence of psychotic or manic symptoms, and was sleeping eight
to ten hours a night; that plaintiff began taking college courses
in the fall semester of 2005, that a November 2005 treatment note
indicated plaintiff was doing major repairs to a rental property,
there was no evidence of mania, and plaintiff did not appear to
be guarded.  <u>Id.</u>  The ALJ cited a treatment note from January 6,
2006 indicating plaintiff had completed a semester of college and
received grades of an "A," a "B," and two "C's."  The court's
review of the record reveals that the ALJ's summary is a fair
representation of the evidence relating to this period, and
substantial evidence supports these findings.  The ALJ found
plaintiff's statements and his mother's statements "concerning
the intensity, persistence and limiting effects of these symptoms
are generally credible from December 31, 2004 through January 6,
2006."  <u>Id.</u>  Finally, the ALJ considered the opinions of the
state agency medical consultants and gave them little weight
because the objective medical evidence showed plaintiff was more
limited during this period than determined by the state agency
consultants, and because the consultants did not adequately
consider the allegations of plaintiff or his mother.  The ALJ did
not discuss the opinion of plaintiff's treating psychiatrist, Dr.
Lauchland, as it might relate to this period.

The ALJ also discussed the evidence upon which he based his finding of medical improvement on January 7, 2006 and thereafter. (R. 23-24). He stated plaintiff was taking college classes; plaintiff's mood was stable, he was taking medication as prescribed without side effects; plaintiff was looking for a part-time job; plaintiff was working on his mother's rental home; he was arrested for another DUI in March 2006, and would be jailed four months beginning in August; in the spring 2006 semester at college plaintiff got an "A," two "C's," and two "D's;" he was going dancing and to casinos; he asked his therapist to lie so he could go to the hospital rather than jail; he played in a golf tournament and helped his friend and brother move; he was responsible for his medications and was keeping appointments; in September 2006 he had increased symptoms after refusing to take his medications; and in January 2007 he "denied having any severe symptoms, hallucinations, paranoia, grandiosity or impulsivity[, and t]here was no objective evidence of psychotic symptoms." (R. 23). The ALJ found that plaintiff was going to school, engaging in social activities, had no symptoms when taking his medication as prescribed, and was attending college with a 2.2 grade point average. (R. 23-24). He concluded, "The objective medical evidence does not establish that claimant continued to experience signs or symptoms related to his bipolar disorder that are disabling as of January 7, 2006.

Therefore, the undersigned finds there was medical improvement."
(R. 24).  The ALJ did not discuss the opinion of plaintiff's
treating psychiatrist, Dr. Lauchland, as it might relate to a
finding of medical improvement.

In assessing plaintiff's RFC on and after January 7, 2006,
the ALJ noted plaintiff was attending college with a 2.2 grade
point average; plaintiff's mother testified his bipolar disorder
improved when he started going to college and, the ALJ found
plaintiff's allegations "not entirely credible."  (R. 25-26).
The ALJ found plaintiff's symptoms are controlled when he takes
his medication, and plaintiff has had no hospitalization or
inpatient treatment after January 7, 2006.  (R. 26).  The ALJ
found that the state agency medical consultants provided no
opinions regarding plaintiff's limitations after January 7, 2006,
and he gave "little weight" to Dr. Lauchland's opinion "as of
January 7, 2007[4] and thereafter," because it is conclusory and
inconsistent with the medical evidence and claimant's activities,
because it is an opinion on an issue reserved to the
Commissioner, and because there is no indication Dr. Lauchland is
familiar with the other record evidence or the requirements of
the Act for finding disability.  (R. 27).

---

[4]The court finds that the date as stated is a typographical
error in the decision and should be January 7, 2006.

**B.   The Parties' Arguments Regarding the Medical Opinion**

Plaintiff argues that the decision does not reveal the ALJ knew Dr. Lauchland is a treating source, that the ALJ assigned the incorrect date to Dr. Lauchland's medical source statement, that Dr. Lauchland's opinion is uncontroverted, that the ALJ summarily rejected the opinion, that the ALJ substituted his own lay opinion for that of Dr. Lauchland, and that substantial record evidence supports the opinion.   The Commissioner argues Dr. Lauchland's opinion was not entitled to more than "less weight," because although the ALJ failed to acknowledge that Dr. Lauchland was a treating source, he gave a proper rationale for giving "little weight" to the opinion, thereby explaining why he did not give the opinion controlling weight.   The Commissioner explained how, in his view, the evidence does not support the limitations assessed by Dr. Lauchland and conflicts with the record evidence.

**D.   Legal Standard for Weighing Medical Opinions**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors
contained in the regulations.  Id. §§ 404.1527(d), 416.927(d);
Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv.,
Rulings 123-24 (Supp. 2009).  A physician who has treated a
patient frequently over an extended period of time (a treating
source)[5] is expected to have greater insight into the patient's
medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th
Cir. 2003).  But, "the opinion of an examining physician [(a
nontreating source)] who only saw the claimant once is not
entitled to the sort of deferential treatment accorded to a
treating physician's opinion."  Id. at 763 (citing Reid v.
Chater, 71 F.3d 372, 374 (10th Cir. 1995)).

The Tenth Circuit has explained the nature of the inquiry
regarding a treating source's medical opinion.  Watkins v.
Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  If the
treating source opinion is not given controlling weight, the
inquiry does not end.  Id. at 1300.  A treating source opinion is
"still entitled to deference and must be weighed using all of the
factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.

---

[5]The regulations define three types of medical sources:
"Treating source:"  a medical source who has provided the
claimant with medical treatment or evaluation in an ongoing
treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  a medical source who has examined the
claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  a medical source who has not
examined the claimant, but provides a medical opinion.  Id.

Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons for the weight he gives the treating source opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." <u>Id.</u> (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

### **E.   Discussion**

The court finds the ALJ did not properly weigh Dr. Lauchland's opinion. First, and most importantly, the decision gives no indication the ALJ realized Dr. Lauchland was a treating psychiatrist. The ALJ stated, "there is no indication <u>this</u>

examiner is familiar with the other evidence of record." (R. 27)(emphasis added). The ALJ's statement tends to suggest both that the ALJ found Dr. Lauchland to be a one-time examining source rather than a treating source, and that the ALJ did not realize that as a psychiatrist treating plaintiff for seven years Dr. Lauchland would be familiar at least with plaintiff's psychiatric history and the evidence related to that history. Although the Commissioner correctly argues that the record reveals why the ALJ would not have given controlling weight to Dr. Lauchland's opinion, the record also suggests the ALJ erroneously failed to recognize that the opinion was worthy of deference as a treating source opinion. As plaintiff argues, the record contains three years of Dr. Lauchland's relevant treatment records for plaintiff (R. 306-45), and plaintiff testified that Dr. Lauchland had been treating him since 2000 (about seven years at the time of the ALJ hearing). (R. 373-74). The opinion of a psychiatrist who has been treating plaintiff for seven years is worthy of considerable deference, and if the ALJ is to properly weigh the opinion, he must acknowledge the length of the treatment relationship. If he is to discount the opinion, he must explain what evidence justifies discounting the deference due such an opinion. Here, the ALJ did not even acknowledge that Dr. Lauchland is a treating psychiatrist.

Dr. Lauchland completed a "Medical Source Statement" dated February 27, 2007, and stated that the earliest date for which her opinion accurately described plaintiff's work-related mental limitations was from the onset of his mental illness in 1998. (R. 347-51). Dr. Lauchland was plaintiff's treating psychiatrist for the entire period at issue in the decision, and the statement describes her opinion regarding plaintiff's mental limitations during the entire period. However, the ALJ erroneously stated that the opinion was completed on February 27, 2005 (R. 27), and he did not address how he had considered Dr. Lauchland's opinion in deciding plaintiff was disabled between December 31, 2004 and January 6, 2006, or in deciding that medical improvement had occurred on January 7, 2006. This is error. Every medical opinion must be considered. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009). More than that, a treating source opinion is worthy of deference. E.g., Watkins, 350 F.3d at 1300-01; Doyal, 331 F.3d at 762.

As plaintiff argues, Dr. Lauchland's opinion is effectively uncontroverted. The only other medical opinion in the record dealing with plaintiff's limitations during the period at issue is that of the state agency consultant psychologists who completed and affirmed a "Psychiatric Review Technique" form on June 6, 2005, and August 17, 2005. (R. 165-80). The state

agency consultants determined that plaintiff had a severe

impairment of bipolar disorder, but that it was not expected to

last twelve months.  <u>Id.</u>  Consequently, they did not complete a

mental residual functional capacity form.  <u>Id.</u>  The ALJ gave

"little weight" to this opinion in finding that plaintiff was

disabled from December 31, 2004 to January 6, 2006 (R. 21), and

found that the consultants did not offer opinions regarding

plaintiff's limitations for the period beginning January 7, 2006.

(R. 27).  Consequently, Dr. Lauchland's opinion is the only

medical opinion relevant to the period beginning January 7, 2006

when the ALJ found medical improvement and determined plaintiff

was no longer disabled.

As plaintiff argues, an ALJ may not substitute his own

medical judgment for that of a mental health professional.

<u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

Therefore, he may not reject Dr. Lauchland's opinion relating to

the period after January 6, 2006 merely because he disagrees with

the opinion.  "In choosing to reject the treating physician's

assessment, an ALJ may not make speculative inferences from

medical reports and may reject a treating physician's opinion

outright only on the basis of contradictory medical evidence and

<u>not due to his or her own credibility judgments, speculation or</u>

<u>lay opinion</u>."  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th

Cir. 2002) (quotation omitted; emphasis in original).  While the

court does not go so far as to say that the ALJ may reject Dr. Lauchland's opinion only on the basis of a contrary medical opinion, it will be exceedingly difficult to discount the physician's opinion merely on the basis of the medical evidence. The ALJ will be required to point to medical evidence in the record which is contrary to Dr. Lauchland's opinion on its face, and without any necessity to draw a medical judgment from that evidence, as the ALJ is not qualified to make medical judgments.

The reasons given by the ALJ to discount Dr. Lauchland's opinion are not supported by substantial evidence in the record as a whole. The ALJ stated Dr. Lauchland's opinion was conclusory. (R. 27). While it is clear that the opinion contains Dr. Lauchland's conclusions regarding plaintiff's limitations (R. 350-51), when one realizes that Dr. Lauchland is a treating psychiatrist, and when one reviews the forty pages of Dr. Lauchland's treatment notes contained in the record (R. 306-45), one cannot dismiss the opinion as merely "conclusory." Moreover, Dr. Lauchland included an explanation of the basis for her conclusions in the "Medical Source Statement:"

> Cameron suffers from schizoaffective disorder. Even when relatively stable, he struggles with misperceptions of others intentions, has problems with focus and concentration, and tends to be guarded/ at times suspicious. He is prone to interpersonal conflicts [with] others.

(R. 351).

The ALJ also discounted the opinion because it was:

> inconsistent with the lack of findings in the mental
> health examinations, claimant's description of his
> activities of daily living, claimant's ability to
> attend college courses and claimant's lack of symptoms
> when he takes prescribed medication.

(R. 27). Dr. Lauchland had seven year's familiarity with these "facts" upon which the ALJ relied in finding inconsistencies. Nonetheless she provided her opinion regarding plaintiff's limitations. The court notes that Dr. Lauchland apparently did not find the facts inconsistent with her opinion. Perhaps this is because (unlike the court and the ALJ) Dr. Lauchland has medical expertise which reveals that the opinion is not inconsistent with the facts. Moreover, the court's review of Dr. Lauchland's treatment records reveals that Dr. Lauchland's findings in the treatment records are remarkably similar over the entire period covered in those records—2/27/04 through 1/16/07. (R. 306-45). This observation tends to support Dr. Lauchland's opinion for the entire period. If the ALJ finds the opinion inconsistent with the treatment records, he must point out specific inconsistencies with specific citation to the record and may not make general assertions without citation.

The court notes that Dr. Lauchland's opinion is contrary to the ALJ's finding of medical improvement after January 6, 2006. And, there is evidence in Dr. Lauchland's treatment notes supporting her opinion. For example, in October of 2005 (before the alleged onset of disability), Dr. Lauchland recommended

-23-

plaintiff only "work minimal hours to balance work, school, rest, and socialization." (R. 321). On June 6, 2006 (after the ALJ found medical improvement), when Dr. Lauchland was informed that plaintiff was required to work as a condition of parole, she noted she would provide a letter because she could support his working part time with support from vocational services but could not support full time work. (R. 312).

Although, as the ALJ noted, plaintiff was going to college, and was doing other activities such as working on his mother's rental property, the impairment at issue here (bipolar disorder) is a chronic mental impairment, and has resulted in decompensation in the past. (R. 204)(listing six "Psychiatric Hospitalizations/Out of Home Placements" since November 1998). The Commissioner has acknowledged that chronic mental disorders often produce particular problems in evaluating mental impairments, and individuals with such impairments may have their lives structured so as to minimize stress, and reduce signs and symptoms. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00E. "In such a case, you may be much more impaired for work than your symptoms and signs would indicate." Id. The ALJ must consider this factor in his evaluation, especially in light of Dr. Lauchland's opinion.

In discounting Dr. Lauchland's opinion, the ALJ stated that "the ultimate determination of disability is an issue reserved to

the Commissioner of the Social Security Administration.  Further,
there is no indication that this examiner is familiar with the
. . . evidentiary requirements for finding an individual disabled
under the Social Security Act."  (R. 27).  In making this
statement, the ALJ implied that although Dr. Lauchland does not
know the requirements for disability pursuant to the Act, she had
opined that plaintiff is disabled for Social Security purposes.

It is true that several times in her treatment records, Dr.
Lauchland indicated plaintiff should work no more than part time.
(R. 312, 321).  One might also reasonably conclude from reading
Dr. Lauchland's records that she supported plaintiff's
application for Social Security benefits.  However, in her
"Medical Source Statement," Dr. Lauchland did not make any
statement that plaintiff was "disabled," or could not work full
time.  (R. 347-51).  Rather, she stated her opinion regarding
plaintiff's ability to perform in fifteen work-related mental
functions.  (R. 350-51).  She opined that plaintiff had a "good"
ability to perform in two mental functional areas, a "fair"
ability to perform in eleven mental functional areas, and a
"poor" ability to perform in two mental functional areas--"deal
with work stresses," and "maintain attention/concentration."  <u>Id.</u>
The statement defines "good," as "Ability to function in this
area is more than satisfactory;" "fair," as "Ability to function
in this area is limited but satisfactory;" and "poor," as

"Ability to function in this area is seriously limited; less than satisfactory but not precluded."  Dr. Lauchland listed no areas in which she found plaintiff had "No useful ability to function in this area."  (R. 350).  Except that the vocational expert testified that a person with the limitations contained in Dr. Lauchland's statement would be unable to perform the representative jobs (R. 411-12), the ALJ's statement that the ultimate issue of disability is reserved to the Commissioner, and that Dr. Lauchland is not familiar with the Act's requirements for disability determination does not even _relate_ to the opinions expressed in Dr. Lauchland's statement.

The court has found four errors in the ALJ's evaluation of Dr. Lauchland's medical opinion:  (1) The ALJ did not weigh or give deference to the opinion as a treating source opinion. (2) The ALJ did not discuss the opinion with regard to the period between December 31, 2004, and January 6, 2006, or with regard to the medical improvement finding, and did not even attempt to assign different weights to the opinion for each period.  (3) The opinion is effectively uncontroverted.  (4) And, the reasons given by the ALJ for discounting the opinion are not supported by substantial evidence in the record as a whole.  Remand is necessary for a proper evaluation of Dr. Lauchland's opinion and for consideration whether medical improvement which is related to ability to work has occurred in light of Dr. Lauchland's opinion.

**IV.  Remand for an Immediate Award of Benefits**

In two paragraphs at the end of his brief, plaintiff asks the court to reverse the Commissioner's decision and remand for an immediate award of benefits "because the evidence establishes that plaintiff is totally disabled," and a "rehearing would serve no purpose but to further delay the awarding of disability benefits to a plaintiff who is clearly disabled." (Pl. Br. 22). Plaintiff is correct that the court has discretion to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  However, the decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Although plaintiff asserts the evidence establishes total disability, and remand for further proceedings would unnecessarily delay the award of benefits, he makes no effort to explain his assertion or to cite to evidence which establishes the proposition asserted.  Further, whether the record establishes disability and entitlement to benefits is an exceedingly close question in this case, but the court is not

convinced the evidence is unequivocal that plaintiff is disabled. Moreover, it is clear the ALJ did not properly weigh Dr. Lauchland's opinion. The court may not weigh the evidence in the first instance, so remand for further proceedings is the better course in this case.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 12th day of April 2010, at Wichita, Kansas.


s:/   Gerald B. Cohn
**GERALD B. COHN**
**United States Magistrate Judge**